No. 00-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 123

TRACY RAUSCH,

Plaintiff and Appellant,

v.

ALAN HOGAN,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kenneth D. Tolliver, David P. Wilkins, Wright Tolliver Guthals, Billings, Montana

For Respondent:

Damon L. Gannett, Gannett Law Firm, Billings, Montana

Submitted on Briefs: February 8, 2001
Decided: July 23, 2001

Filed:

_____

Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 This appeal arises from an action to partition property owned jointly by respondent Alan Hogan (Hogan) and appellant Tracy Rausch (Rausch), who were formerly married. Rausch sought partition of the property on an equal basis, and Hogan objected. Following a hearing, the District Court found that Hogan had rebutted the presumption of equal shares in land held in joint tenancy, and "equitably" divided the property by awarding 100% of the property to Hogan, with Rausch receiving no payment for any portion of the property. Rausch was awarded payment for half the rental value of the property from the date the petition was filed. Rausch appeals. We reverse and remand with instructions.

¶2 Rausch raises the following two issues on appeal:

¶3 **1. Was retrial of the marital equities barred by collateral estoppel, *res judicata*, judicial estoppel, and § 40-4-208, MCA?**

¶4 **2. Did the defendant meet the burden of rebutting the presumption of equal shares enjoyed by joint tenants?**

### Factual and Procedural History

¶5 Rausch and Hogan were married on August 9, 1991, in Sturgis, South Dakota. After five years of marriage, the parties separated in 1996. During the marriage, the parties' primary residence was in Stillwater County, Montana. Although the property was purchased by Hogan before the marriage, Rausch's name was added to the deed in May, 1993, and a joint tenancy with rights of survivorship was created. When the parties separated, they divided their personal possessions, and entered into a property settlement agreement on April 18, 1997. This agreement provides in relevant part as follows:

Real Property: The parties have divided all real property between them in a manner which each agrees is fair and equitable. So that no question exists, the Husband shall

have as his sole and separate property, all real property currently in his name, and the Wife shall have as her sole and separate property, all the real property currently in her name. Notwithstanding the foregoing, Husband and Wife shall continue to own jointly between them, with the right of survivorship, the parties' residence located in Stillwater County, Montana . . .

¶6 In its Findings of Fact and Conclusions of Law and final Decree of Dissolution of Marriage the court concluded, "[t]hat the property division as agreed by the parties in the Property Settlement Agreement signed by each of them on the 18th day of April, 1997, is equitable and is hereby approved by this Court."

¶7 Several years after the divorce, wishing to wrap up financial affairs with her former husband, Rausch filed this action for partition of the Stillwater County, Montana residence, seeking an equal division of the value of the property. A trial was held in the partition action. Essentially, Hogan argued that the property settlement agreement entered into between the parties had been unfair, and that Rausch should be denied any recovery for her interest in the property because it had been purchased prior to the marriage and because she did not contribute to the marriage financially. Rausch filed a motion in limine, seeking to preclude Hogan from reopening or relitigating matters which had been or should have been raised in the divorce proceeding. The court denied her motion, reasoning that the property was not divided in the divorce, and concluding that, since a partition action is an action at equity, surrounding circumstances can be considered by the court in dividing the property. In its order dismissing the motion in limine, the District Court specifically noted that, "[t]he parties divorced in 1997 without dealing with the house at issue in this case." The District Court therefore allowed Hogan to introduce testimony regarding the marital equities.

¶8 According to the evidence, the property settlement agreement had initially provided that the parties would continue to hold the house 50/50, or in equal shares after the divorce. Rausch and Hogan met in Hogan's attorney's office in order to discuss the terms of the property settlement. Rausch was dissatisfied with this language because of the difficulty involved in dividing the property with Hogan's children from a previous relationship if he died. So that Rausch could avoid future dealings with Hogan's children, the language of the property settlement agreement was changed by Hogan's attorney to read that the property would be held, "jointly between them, with right of survivorship." Rausch testified she believed that, with the revised language, her share of the property remained 50%. There is no evidence in the record that another percentage was bargained

for.

¶9 At trial, Hogan argued that Rausch was not entitled to half of the property, and that the 50% presumption of ownership in a joint tenancy should not apply in this case. Hogan was asked to identify some other percentage of ownership he may have had in mind when executing the deed or when signing the property settlement. He identified none, indicating that while he was hoping he would not have to pay Rausch for an interest in the house, he nonetheless agreed to the division of property because he "needed a divorce."

¶10 Ultimately, the District Court concluded that Rausch's interest in the property was not compensable. In reaching this decision, the court examined the equities underlying the marriage and the divorce proceeding, and determined that because Rausch had not contributed significantly to the acquisition or improvement of the property and had not contributed to the parties' assets during the marriage, she was not entitled to any compensation for her interest in the residence.

## Standard of Review

¶11 This Court reviews a district court's conclusions of law de novo to determine whether they are correct. *Steer, Inc. v. Dept. of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. We review a district court's findings of fact to determine whether they are clearly erroneous. *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

## Discussion

¶12 **Issue 1. Was retrial of the marital equities barred by collateral estoppel,** *res judicata***, judicial estoppel, and § 40-4-208, MCA?**

¶13 Rausch argues that the District Court erred in denying her motion in limine to prevent Hogan from retrying the merits of the divorce and property settlement. Seeking application of the doctrine of collateral estoppel, she argues that the District Court should not have allowed relitigation of issues that were settled in the divorce. We agree.

¶14 The doctrines of *res judicata*, collateral estoppel, and law of the case, are all based on a judicial policy favoring a definite end to litigation. *Federated Mut. Ins. Co. v. Anderson*, 1999 MT 288, ¶ 58, 297 Mont. 33, ¶ 58, 991 P.2d 915, ¶ 58. The doctrine of *res judicata* prevents a party from relitigating a matter that the party has already had an opportunity to

litigate. *Federated*, ¶ 58.

¶15 Collateral estoppel, sometimes referred to as issue preclusion, is a form of *res judicata*. While *res judicata* bars parties from relitigating claims in subsequent proceedings based on the same cause of action, collateral estoppel bars the reopening of an issue in a second cause of action that has been litigated and determined in a prior suit. *Holtman v. 4-G's Plumbing & Heating, Inc.* (1994), 264 Mont. 432, 439, 872 P.2d 318, 322.

¶16 This Court applies a three part test to determine if collateral estoppel bars relitigation of an issue. *Haines Pipeline Const. v. Montana Power* (1994), 265 Mont. 282, 288, 876 P.2d 632, 636. First, was the issue decided in the prior adjudication identical with the one presented in the action in question? Second, was there a final judgment on the merits? Third, was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? *Haines Pipeline*, 265 Mont at 288, 876 P.2d at 636. *In re Raymond W. George Trust*, 1999 MT 223, ¶ 42, 296 Mont. 56, ¶ 42, 986 P.2d 427, ¶ 42.

¶17 The second and third prongs of the *Haines Pipeline* test were clearly met in this case. The property settlement agreement was approved by both the parties and the court, and was incorporated into the final Decree of Dissolution. Thus, there was a final judgment on the merits of the parties' dissolution. The parties are the same in both actions, so the third prong is met as well. Satisfaction of the first prong, however, is the most important element of collateral estoppel. *Holtman*, 264 Mont. at 439, 872 P.2d at 322. In order to satisfy this prong, the identical issue or "precise question" must have been litigated in the prior action. *Holtman*, 264 Mont. at 439, 872 P.2d at 322. We compare the pleadings, evidence, and circumstances of the two actions to determine whether the issues are identical. *Fadness v. Cody* (1997), 287 Mont. 89, 96, 915 P.2d 584, 588.

¶18 In the property settlement agreement, Rausch and Hogan divided all real and personal property. Moreover, they agreed that with regard to the residence, they would, "continue to own jointly between them, with the right of survivorship, the residence . . ." In its Decree of Dissolution of Marriage, the District Court affirmatively found that the property settlement agreement, *which included the joint ownership of the residence*, was fair and equitable. While the property was obviously not partitioned in the divorce, nonetheless the fairness of the joint ownership of the property was agreed to by the parties, and was considered and approved by the District Court in the final Decree of Dissolution. This being so, we find that the identical issue presented here--the fairness of joint ownership of

the property--was resolved in the dissolution proceeding, and the first prong of the *Haines Pipeline* test was met here as well. Accordingly, the principles of collateral estoppel bar relitigation of the fairness of the joint ownership. We therefore conclude it was error for the District Court to review and reweigh the relative contributions each party made to the marriage and the resulting equities of the property division in the partition action.

¶19 Finally, Rausch argues that § 40-4-208, MCA, precludes modification or revocation of the property settlement agreement. Hogan argues that the dissolution action was not in fact "opened" as a result of the District Court's judgment. Because we have resolved this case on the basis of collateral estoppel, we decline to address this argument.

¶20 **Issue 2**. **Did the defendant meet the burden of rebutting the presumption of equal shares enjoyed by joint tenants?**

¶21 Having ruled that the District Court erred in considering the marital equities and the equities of the property division in the partition action, the question becomes what other evidence, if any, could be considered by the District Court in determining how to partition the property? Although the District Court could not disturb the finding in the divorce decree that joint ownership of the residence was fair and equitable, there remained unresolved what the parties intended by their declaration that they would continue to hold the property "jointly between them," as set forth in the property settlement agreement. In other words, did the parties intend "jointly" to mean "equally," or was there an intent to hold the property in unequal proportions? In addition, the court could take into account any matters or events occurring after the decree was entered that rendered equal division of the property unfair.

¶22 Actions concerning property which is jointly owned are governed by Title 70. Section 70-1-307, MCA, provides:

> A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy or when granted or devised to executors or trustees as joint tenants.

An action for partition is brought under § 70-29-101, MCA, which provides:

> When several cotenants hold and are in possession of real property as joint tenants or tenants in common, in which one or more of them have an estate of inheritance or

for life or lives or for years, an action may be brought by one or more of such persons for a partition thereof, according to the respective rights of the persons interested therein, and for a sale of such property or a part thereof if it appears that a partition cannot be made without a great prejudice to the owners.

¶23 We turn first to the District Court's finding that the mere filing of the partition action severed the joint tenancy. The District Court stated:

By filing her partition action, Tracy caused her interest, if any, in the subject real property to change from that [of] a joint tenant, with the right of survivorship, to a co-tenant of the real property.

We disagree with the court's finding in this regard. The filing of a partition action does not sever or alter one's interest in the property. Rather, the rights of the parties to the action are ". . . put in issue, tried, and determined in such action." Section 70-29-201, MCA. The parties' respective interests in the property remain intact until the judgment of the court severing the tenancy is entered. We therefore conclude the District Court erred in finding that the filing of the partition action by Rausch accomplished a severance of the tenancy.

¶24 We now turn to the presumptions which underlie a joint tenancy in property. There is a rebuttable presumption of equal shares where land is held in joint tenancy. When two people own real property as joint tenants with the right of survivorship, each owns equal shares in the property. *Matter of Estate of Garland* (1996), 279 Mont. 269, 274, 928 P.2d 928, 930. *Dern*, 279 Mont. at 152, 928 P.2d at 132. Where one party seeks to establish that the parties intended an unequal division, the intent to confer unequal contributions must be demonstrated. *Dern,* 279 Mont. at 153, 928 P.2d at 132. Because Hogan sought the unequal division, it was incumbent upon him to affirmatively demonstrate that he and Rausch intended that their joint tenancy be unequal. We find he failed to carry this burden.

¶25 The evidence presented at trial, and the testimony of the parties on the question of their intent, summarized above, does nothing to rebut the presumption of equal shares. In fact, the evidence supports a presumption of equal division. The 1993 deed created a joint tenancy with rights of survivorship. The language of the property settlement agreement provided that the parties would continue to hold the property as joint tenants with rights of survivorship. Rausch testified she believed the division of the property would be 50/50. Hogan did not disagree, and did not suggest in his testimony that some other unequal division was contemplated when the agreement was reached. Rather, he candidly admitted

that he hoped not to give her a share of the property, but signed the property settlement agreement anyway because he wanted the divorce. Moreover, Hogan offered no evidence of post-decree events which would justify a different result. This being the sum of the evidence on the parties' intent, and in light of our decision that it was error to consider the marital equities that were settled by the Decree of Dissolution, we conclude that Hogan failed to carry his burden of rebutting the presumption of equal shares. Therefore, Rausch is entitled to judgment of partition as 50% owner of the property.

¶26 We reverse and remand to the District Court for further proceedings consistent with this opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Justice James C. Nelson dissents.

¶27 I respectfully dissent from the Court's opinion. I would affirm the decision of the District Court.

¶28 As to Issue 1, I am at a complete loss to understand the majority's rationale. As a prelude to the divorce decree Rausch and Hogan signed a property settlement agreement and determined to hold the disputed piece of residential property as joint tenants with right of survivorship.[1] The trial court found that this agreement was "equitable." Thus, the court approved the agreement.

¶29 There was no issue in the divorce litigation raised, much less litigated, nor were there any findings or legal conclusions entered, as to which party owned what percentage interest in the jointly held property. There was no testimony in the divorce proceedings to which we have been directed concerning the parties' respective equities in the jointly held

property. The divorce litigation ended simply with a mutual agreement to hold a certain property in joint tenancy and the court's approval of that agreement. Nothing more. As a result, the parties left their marriage owning a property as joint tenants with right of survivorship--presumptively 50-50, under the law. End of story.

¶30 Under these circumstances, why and how principles of *res judicata* and collateral estoppel bar Hogan from presenting proof in a separate partition action to rebut the presumption of 50 percent ownership, is a mystery to me. *Res judicata* cannot bar Hogan from "relitigating" the matter of Rausch's ownership claim because the parties never "litigated" that claim in the first instance. Similarly, Rausch and Hogan never litigated any issue regarding the parties' respective percentage of ownership in the jointly held property. Accordingly, collateral estoppel is not a viable bar to Hogan's proof either. Finally, a judgment on the merits was never entered respecting the percentage of ownership claim/ issue--the only judgment the divorce court entered was that it was "equitable" that the parties agree to hold the property as joint tenants following the dissolution of their marriage. Importantly, there was no evidence, findings, or conclusions, much less any decision, in the divorce action as to what were the parties' exact percentages of ownership in the jointly held property. *Res judicata* and collateral estoppel, thus, have no application to the partition action.

¶31 Issue 2 is even more problematic. As the majority points out in ¶ 24, the law presumed that Rausch and Hogan left the divorce holding the joint tenancy property 50 percent each. As the majority also observes, this legal presumption is *rebuttable* and the party seeking to establish an unequal division in a partition action must prove that the joint tenancy percentages were something other than the presumed 50-50. That, of course, begs the question of what sort of proof will the party who disputes equal shares have to put before the fact finder to overcome the presumption.

¶32 Obviously, in the context of this case, the most critical proof that Hogan could have brought to bear on the percentages issue was evidence of Rausch's pre-marital and marital contributions, if any, to the property. This is the evidence which the majority characterizes--or, rather, mis-characterizes--as the "marital equities" evidence. And, as we learn in ¶ 21, this is the evidence that the majority concludes the trial court erred in considering. In short, according to the majority, Hogan was barred (by *res judicata* and collateral estoppel arising as a result of the divorce case) from putting before the trial court in the partition action the very evidence that he needed to offer in order to rebut the rebuttable presumption of equal shares.

¶33 Not content to leave Hogan's case a lifeless corpse on the courtroom floor, however, the majority then proceeds in ¶¶ 24 and 25 to fault him for failing to carry his burden of proof. How could he? The majority made that an impossibility by its decision in Issue 1.

¶34 The bottom line is this: the divorce action and the partition action were completely discrete and unrelated actions. The divorce proceeding resolved the property distribution issue and left the parties, by their agreement, as joint owners of the residence. In the absence of the parties specifying anything in their agreement to the contrary, the law presumed (rebuttably) that their joint ownership was in equal shares. Importantly, the only matter the divorce litigation resolved was that the parties would hold the residence as joint tenants and that it was equitable that they do so.

¶35 The partition action, on the other hand, was brought specifically to severe the parties' joint interest in the property and, as an integral part of that litigation, to determine whether the presumption of equal shares could or should be rebutted. The partition litigation--and not the divorce litigation--necessitated the contributions evidence that Hogan sought to offer so that, in the words of § 70-29-101, MCA, "the respective rights of the persons interested [in the property]" could be determined and divided. It is this evidence which, on the one hand, the majority holds was improperly considered by the trial court but, which, in the next breath, the majority faults Hogan for not offering.

¶36 The District Court was correct in considering Hogan's evidence, and it was also correct in awarding him 100 percent of the residence--a property which he brought into the marriage and to which Rausch contributed little, if anything at all. Our decision in this case has unfairly deprived Hogan of his lawful interest in the residence. Worse, our analysis in arriving at this result is reminiscent of a scene from the Three Stooges--the one where Larry is chucking Curly under the chin while Moe is simultaneously hammering him on the head. Whup! Whup! Whup!

¶37 I dissent.

/S/ JAMES C. NELSON

Justice Terry N. Trieweiler joins in the foregoing dissent.

/S/ TERRY N. TRIEWEILER

1. The pertinent part of the settlement agreement states in its entirety: "Notwithstanding the foregoing, Husband and Wife shall continue to own jointly between them, with the right of survivorship, the parties residence located in Stillwater, Montana, more particularly described as follows: [then follows the legal description of the property]."